Case No. 23-5311, Norwich Pharmaceuticals, Inc. Appellant v. Robert F. Kennedy Jr. in his official capacity as Secretary of Health and Human Services et al., Mr. Prince for the appellant, Mr. Day for the federal appellant, and Mr. Killian for the African-American Pharmaceuticals, Inc. Good morning, Your Honors, and may it please the Court. When Norwich first submitted its generic Rifaximin application to FDA, it sought approval to treat both IBSD, which is irritable bowel syndrome with diarrhea, and HE, hepatic encephalopathy. In ensuing patent litigation between Norwich and the brand Salix, the Delaware Court concluded that Salix's drug product patent and IBSD patents were either invalid or not infringed, but that Norwich's then-application did infringe Salix's patent covering the HE indication. The Delaware Court accordingly issued what's known as a resetting order under the Patent Act directing that FDA approval of that application not be made effective until the HE patents expire. As permitted, Norwich amended its ANDA to remove the infringing HE use from its application and requested that FDA then approve it. At that time, FDA correctly recognized that the application no longer contained the infringing HE use and certifications, but incorrectly concluded that it was still blocked by the prior resetting order issued in connection with the HE certification. That decision is inconsistent with the Delaware Court's judgment, the plain language of the Patent Act as interpreted by the Federal Circuit in our very patent appeal, and the Food, Drug, and Cosmetic Act and its implementing regulations. I'd like to start with the judgment, if I might, because my friend suggests that I'm at war with it and I'm trying to ignore its language or collaterally attack it. But we fully accept the Delaware Court's judgment was lawful. It just does not mean, and as the Federal Circuit went on to explain, cannot mean what FDA says it means. Indeed, the Delaware Court's judgment was the only lawful judgment it could issue in the circumstances, delaying approval of the ANDA before it and naming it by because that's what we were talking about. And as Salix has argued before, that's what resetting orders always look like. The implications of FDA's argument... Can I just clarify something up front, which I think you were hinting at? I completely understand the argument that we ought to assume the Delaware Court understands the law, and so that's why we would look to the statute and the regulation to understand how this is supposed to work. Yes. But you are not arguing, and you didn't argue below, that the FDA in some sense was not bound or for any other reason was free not to follow that judgment if the judgment said effectively even an amended ANDA will be delayed until October 2029. I have my own views about how the statute should work in that circumstance, but that's correct. We've accepted that in this case. Okay, thank you. And your position is that the Delaware Court's judgment does not block the FDA from approving your amended ANDA? That's what we're here about, right? That's correct, because as the Federal Circuit went on to explain, a resetting order is a remedy for the specific act of infringement defined in, I think, 271E4 or E2, which is the submission of an application containing an infringing use for which the submitter seeks approval. Why did you move in Delaware District Court for them to amend their judgment? Because we were admittedly confused at that time about the patent attorneys in that case were confused about what the resetting order would do. And by the way, not just we were confused, Salix was confused too, because they were taking the other position then. Their position was, this isn't going to have the effect you're saying it is. They were instead arguing that what we're going to need is a second litigation, right? They said they need discovery on it, and so they were not taking the position that it blocked FDA. It seems like in the dispute of what the order meant, you prevailed. The district court concluded that Salix was wrong, and you were right, that the order would preclude an amended ANDA's approval. I don't think the district court concluded. The district court entered Salix's form of judgment, not our form of judgment. And what I think the district court thought was happening was that, and I can understand why in retrospect it thought we were doing this. It thought we were effectively trying to get an advisory opinion that once we carved out the ANDA, it would no longer be infringing. And that's why the parties are discussing and the district court discusses in its reconsideration order that that would be unfair, because just because we carve out doesn't automatically mean it would be non-infringing in the future. It almost certainly does mean that, and in this case it did mean that, and we know that because Salix sued us in the 370 case we're talking about and did not claim the application was still infringing on those grounds. But in theory, it would be possible for the carve-out not to remove the infringement. And that typically comes up, for example, not in these method of use cases, but if you're reformulating your products to try and avoid an infringement. Let me ask you, as a bit of a hypothetical, because I'm not asking you to concede that this is what happened, but if you argued in the the Rule 60 motion to the Delaware District Court that the unamended, the order as originally issued by the Delaware District Court, would preclude the FDA from approving an amended ANDA, and the Delaware District Court and the Federal Circuit agreed with you that that is the effect of the Delaware District Court's judgment, then you have successfully told the Delaware District Court that that interpretation is the proper interpretation, contrary to what Salix may have been saying in the Delaware District Court. Now you come here and you argue the opposite, that the Delaware District Court's judgment does not preclude the FDA's approval of an amended ANDA. And if that is what happened, that seems like an example, that seems like you have satisfied the elements of judicial estoppel, where you're not allowed to argue here what you argued to the Delaware District Court and successfully persuaded the Delaware District Court that your argument about the meaning of its original judgment was, in fact, the correct meaning. Right, but we did not convince either the District Court or the Federal Circuit that that was the correct interpretation of the order. In fact, those courts said, we are deeply confused and we don't know what you're talking about, Norwich. At JA-221, which is the Delaware Court's explanatory order, it explains the scope of its order and it says, this contains the HE indication which would infringe the patents, nor which is proposed ANDA has that. I cannot rule on facts that are not before me, including the possibility of an amended ANDA, which it recognizes we're entitled to submit under the statute. That label is not before me. It's immaterial. The Federal Circuit was extremely explicit about this on appeal. It said, Norwich, I don't know what you're talking about because a resetting order is a specific remedy. It's directed to a specific infringing use in the application. It specifically says it does not cover non-infringing uses. And that's why the Federal Circuit said nothing in the Delaware Court's version. The hardest fact for you, in my opinion, is that they never said it doesn't block your amended ANDA. And so it would have been the easiest thing in the world for the District Court to say, when you come to them, understandably complaining. It's absurd for you to have a complete prohibition on our amended ANDA. It's not infringing. Easiest thing in the world for the District Court to say, no problem. I don't even need to change the judgment because that's clearly not what it does. And as I understand your cross appeal in the Federal Circuit, this was essentially the whole issue. And again, it says you can file a new ANDA, but it doesn't say this whole cross appeal is of no moment because the judgment doesn't bar the amended ANDA. And I could grant you that that might make no sense, but they never said the judgment doesn't bar your amended ANDA. So why isn't that a powerful point against you? Well, I too, of course, wish those courts had said it exactly in the way you're saying, but I think that's effectively what they are saying, especially the Federal Circuit, which says the statute is appropriately directed to approval of the particular uses involved in the infringement, not the non-infringing uses. And it described the remedy provision as delaying approval of the drug involved in the infringement. It did very explicitly say, nor which says that this would block approval of a new ANDA. And the Federal Circuit says that's absolutely wrong. Nothing in the order suggests that. And I know this is difficult because it does say the word new, but we were never arguing in the Federal Circuit. Nobody was arguing in the Federal Circuit that it would block literally a new ANDA, right? The only new ANDA that was at all at issue at that point, this 370 wasn't even in the world. The only new ANDA we were talking about is the amendment to the 369 ANDA that we had then submitted. So that's what the Federal Circuit is talking about, but I totally get that the language is a little- I'm sorry, you just said that nobody was arguing that in the Federal Circuit? Nobody in the Federal Circuit was arguing that the order would block approval of a different ANDA. Of the amended ANDA? No, we were only arguing about whether it would block approval of the amended ANDA. And that's why- I was going to say you were definitely arguing- No, we were absolutely- that was our whole point. And when the Federal Circuit said, no, it would not block approval of a new ANDA, it's talking about our amended ANDA, but I recognized the language. So what does footnote 10 mean? It says- it's exactly after this discussion. And it says, basically, Norwich got approval of its amended ANDA. The tentative approval letter noted that final approval cannot be granted until October 2, 2029 as specified in the court order. There's not a next sentence that says that makes no sense. The judgment doesn't apply to the amended ANDA. Right. It does not address the issue because it recognized there was pending litigation in D.C. And that's not the Federal Circuit's issue to decide. That's this court's issue to decide, and the D.C. and the D.C. District Courts. So I think it was just reserving the issue without getting into the weeds of it. But if I could just take one minute. FDA's interpretation of this is entirely inconsistent with the entire way the Food, Drug, and Cosmetic Act is structured, which specifically tells it to apply timing rules only to the certification made in the application. Our application at the time it ran those timing rules did not contain this certification. And its regulations not only contemplate us doing exactly what we did, they require it. Well, I mean, there are some distinctions. You chose to file an amended ANDA. I think the premise in the District of Delaware and the Federal Circuit was you could file a new one. And the distinction there, is that about filing fees or is that about where you are in the queue or why an amended ANDA rather than a separate one, or as you've done with the 370, you know, that one, which is distinct from the 369? Right. There are lots of reasons why you wouldn't want to file literally an entirely separate ANDA, including the filing fees, which are very significant, many hundreds of thousands of dollars. You go back to the queue and the line. There could be other, you know, there's a possibility of an additional 30 months stay potentially when you file that application that would delay approval, you know, not just at the back of the queue, but for many more years. So there's a lot of reasons why the statute wouldn't require you to do that and why FDA's own regulations don't contemplate you doing that. Instead, they provide specifically you can either accept the patent court judgment and change it to a Paragraph 3 certification, in which case the patent court's judgment is effectuated, or you can change your application to remove the infringing use, to make a Section 8 statement to that use, to carve it out, and then you're immediately approvable. It's literally what its regulations say. There's no other way to read the regulations, and I don't read my friends to even be disputing that. They're just trying to wish it away, wish away their regulations and wish away the entire structure of the Act that instructs them how it's supposed to read at the court judgment. So given the other case, what are the stakes here, given the 370 case? So if everyone agrees you can file a new ANDA without the infringing use, and you've effectively done that in amending the 370, and what's at stake here for you? So the simple answer is there's two separate applications, and although they're ultimately going to approve the same drug product, the statute allows us to have two, but they're in different phases of the process, right? Here we currently have an FDA's decision that says we can't be approved until the expiration of the AHE patent. In 370, we have a different determination that says we're blocked by exclusivity, and, for example, Salix in that case is arguing they have unique defenses to the approval of the—basically, everyone said just go file another ANDA. So we file the other ANDA. It's the 370 ANDA, and now Salix is saying, oh, there needs to be a 30-month stay on that ANDA. Oh, you can't—you know, the judgments that you spent years winning, they don't actually apply to the 370 ANDA. So, you know, they're intertwined. They're intertwined in a way. It is true that at the end of the day, we will probably market the one of the two ANDAs on which FDA approves first, but nothing prohibits us from proceeding on parallel tracks, and nobody, by the way, in the case has argued that we can't do that. Can you identify a case where a generic has amended after trial and then gotten approval without a court considering it in litigation? I was not able to identify a case either way, and the reason why is because this is sort of a unicorn set of factors that came up because we invalidated or showed inapplicable, depending on the patent, like the product patent and one of the use patents. So it's a unique situation where there's one unpatented use of the drug, but there's no broader prohibition on the drug. That does not come up very often. But again, even if there's no example I can point you to, FDA's regulations provide the example. They tell you you can do it. Maybe you've just answered my question, but if it's sort of completely consistent with the statute of regulations to do what you've tried to do, which is amend the ANDA once you hear which part of it is infringing, there seems like there's in the law emphasis about pre-judgment amendments, like that's when you have to do it. And I'm having a little trouble squaring that with your position. So the law will, in certain circumstances, allow you to do it, but you're typically doing that in, and I'll answer the question in a couple days, because there's reasons why you would want to do that. But typically those cases are about, not about method of use patents, but are about formulation patents. So you're in the middle of trial. It looks like where you get a determination that your formulation is going to infringe, and you said, well, wait, I can reformulate the certification, or sorry, reformulate the formulation and avoid that infringement. And everybody wants it all to be resolved at the same time. And the reason an ANDA might, for example, want to do that is because if you're litigating in this pre-approval posture, there's not the possibility of damages, right? So you don't have to do it that way. And the act would allow approval if you didn't do it that way. But if you launch, you can subject yourself to some pretty substantial damages in some circumstances. So this, the District Court thought that this Farring case from the Federal Circuit was analogous, I'm just going to say how the District Court read it, which was it thought that at least the Federal Circuit thinks in a situation like what we have here, you do need a change to the judgment, and that's discretionary with the District Court. Is, can you give us your distinction of that? Is it distinguishable, or is it just? Well, that is, that's a formulation case. It's exactly, it's exactly what I was talking about. And by the way, I think that case actually supports exactly what I'm saying, because that case very explicitly holds that when we're talking about the application that you're litigating in the Patent Court, it's the operative application. It's the application as amended at the time you're litigating it in the Patent Court. So I think that case is actually. So why is a post-judgment change of your formulation different in a material way from a post-judgment change in your intended use? Because we would still need to, we still need to certify to that formulation master. It doesn't work like method of use patents where you can literally drop it out and take it out. If there's no more questions. So, I mean, this is a question I have, and maybe it's for the, for your friends on the other side, but one of the responses of the District Court and of the agency is, you know, you chose how to package your ANDA, and you kind of have to live with that. And I guess, why? I mean, if it's got components, and I take your answer to be why you don't file sort of more modularly, like an ANDA for one intended use and a separate one for another intended use, you don't have this problem. You can just, okay, that one's infringing. We don't pursue it. But the ones that are non-infringing are standalone. They're not, you know, tied up with one that's infringing. So one answer is to do it that way, then you'd be paying a lot more. Well, it's paying a lot more, and it's entirely inefficient. Because I take your question to be, well, why wouldn't we go in with the skinniest label possible, litigate that, get approval, and then add the uses on? And the answer is, because when you add those uses on, you get subject to an additional 30 months. I mean, it would take forever. And you couldn't do it all simultaneously. Like, we have this sub-label, this sub-label, this sub-label, and if we win them all, we put them all together. Right, right, yeah. That's just not something. That's, if I understand the question, that's not a thing, yeah. Can't be done, or wouldn't be done. Which is it? It wouldn't be done. Well, it's all part of the same. Maybe if you can restate your question, I'm not sure. Well, like, if you have three different intended uses, and you're not sure if one of them is going to go south and the other one's not, and you want to be able to go right to market with ones that are not infringing, and if your opponents are right about the one takes the whole thing down, the one that's infringing makes the whole ANDA invalid, then it seems like next time, would you have separate ANDAs and sort of bring them together as like joinder of claims and not have that problem? And I take it that the answer is, well, first of all, you would want them to be the same case. You would want them to go at the same time. You're using the same, largely the same evidence. Right. And so it's a strange formalism to require that. Yes. To be, and it's not even really, you know, contemplated. That's exactly right. But conceptually, that's exactly what you say, how you should be treated, which is that you have one infringing, two non-infringing intended uses, and you should be able to proceed in some way. And you're looking for the way to proceed promptly with the non-infringing. Right. I mean, the statute wants you to file the, you know, the broadest possible ANDA you can, right? And that's why it'll, and then so you do, you challenge or you subject yourself to challenge on everything. And then specifically with method of use patents, I mean, right, method of use patents are treated entirely different under the statutory scheme in that you are then allowed to say, okay, I'm going to carve that out, right? I mean, carve outs are an absolutely critical portion of how the generic industry operates. And that's exactly what we did here. I'll just say in closing, our interpretation of this order is the only one that harmonizes everything in this case. It harmonizes how the federal circuit described the Patent Act is meant to operate. It harmonates with how the enabling statute of FDA tells it to read patent orders, and it harmonizes with FDA's regulation. FDA's interpretation of it is completely at war with all of those. Did SAILCS have an opportunity to challenge the amended ANDA at trial in Delaware? So in the previous patent litigation, did it challenge? No, I mean, that's what we were arguing about before the district court litigation. So if SAILCS truly believed that that application was now infringing, it could file a second patent litigation against us. But this is the key. It doesn't believe, it's all made up. They do not believe it's truly infringing. And we know that because they did not sue us on that basis on the 370 application, which is the exact same now drug. So the ones that were found, the intended uses that were found non-infringing in the district of Delaware litigation, there's a little bit of unclarity in my view in the briefing, where they were not stipulated. They were subject to trial. Those, and they're the IBSD and the formulation. Polymorph. Polymorph. Yeah. Those were not stipulated to be non-infringing, but they were held to be non-infringing. So I want to be absolutely accurate. And if you look at the, I think it is the FDA's second forfeiture memo in the record, and I can get you the, it's in the other case, but I can get you the citation. And also the tentative approval in this case, which is JA-335. It goes through the patents. So there were final judgments on one of the polymorph patents, and I think a couple of the IBSD patents, because those were their best patents. And then for other patents that also related to that, there were stipulations of non-infringement. So basically what happened in the Delaware court is they tried their best patents, and we prevailed on those patents, except for HE, which the statute allows us to carve out, and we did. I think the answer to this next question is no, but if we were to rule for you in the next case, would that moot this case? No, it wouldn't moot that case. Part of the reasons that I'm talking about is Salix says it has unique defenses. It would basically sue for a TRO to say that FDA validated the 30-month stay decision, even though they've already addressed. I could see, depending on how broadly you rule for us in 370, it might, not in a legal sense, but it might make the 369 appeal less important. But there's a whole bunch different moving puzzle pieces here at the same time. I was wondering that about the 180-day exclusivity in 370. If you were to prevail here, wouldn't that, you'd have to confront that here too? So if we prevail on this case, the patent-related hurdle is clear. We're eligible for immediate approval. FDA would need to confront the 180-day exclusivity issue, which is the exact issue in 370. And so, I mean, that's why we're pushing both at the same time, because if we just took 370 off the table, we would just be back here in a year, and we would need to go through all these really complicated statutory provisions. So if that's the same in both, I guess I'm sort of trying to absorb the answer that you had to Judge Walker's question. Is there only, the 30-month stay would not be applicable here, but would be applicable there? FDA concluded in the other appeal that the 30-month stay is inapplicable in that case. SAILIX, however, contends that FDA erred about that and has indicated an intent to sue FDA about it. But it can't do that here. I mean, I think it did raise it in its reply brief, but it's just not before the court, because their claims aren't ripe until FDA grants final approval. Thank you, Your Honors. I appreciate it. Good morning, Mr. Schoenfeld. Good morning, Mr. Day, for this case. Thank you. Thank you. Yeah, of course. Funny, the two cases sort of look alike. Good morning, Your Honors. May it please the Court. Hayne Day for the government. Norwich's position that it was confused about the meaning of the Delaware court judgment cannot be squared with the Delaware record. That judgment, Norwich asked for a judgment that was narrow, that would have allowed it to carve out the HE indication and seek immediate approval from FDA. The district court refused to do that because it would not prejudge infringement questions about that carved-out ANDA. It instead adopted SAILIX's proposed language. Everyone, Norwich included, understood that judgment to bar even amended versions of Norwich's ANDA. As Norwich put it, it operated as a, quote, absolute prohibition on FDA's approval of Norwich's amended ANDA. That's on JA83. But why? That doesn't make sense. I mean, given what Mr. Prince was just arguing, if they'd gone to trial and the court has found that two indications are not infringing, what is gained by treating the way those non-infringing indications were packaged together in the ANDA with one that was found infringing? What is gained by having the infringement finding with respect here to hepatic encephalopathy prevent going to market quickly on a non-infringing indication? I don't really follow that. Yeah. I think there are good reasons. But before I get there, I want to make clear that whether or not there are good reasons, that's not really before the court. That's a question about the validity of the judgment. I don't understand the statute that you're defending and the logic of it. Yeah. And I think there are good reasons, given the litigation strategy. And talking about, Judge Pillard, the questions you asked about what reached final judgment and what reached settlement, that's sort of indicative here as well, because the patent litigation involves narrowing your claims. Salix had to choose to narrow its claims to come down to specific indications. And that's based on the ANDA that Norwich had filed at that point. Had Norwich done a pre-judgment carve-out, as the case law recognizes as appropriate, it could have focused on different claims and presented different arguments. So I think that's one reason it makes sense. Go ahead. Go ahead. If it had done a pre-judgment carve-out, the validity and infringement of those other patents wouldn't have been litigated. And that's exactly what the Act wants. Doesn't it want broad ANDA's full patent litigation to clear out bad patent litigation, bad patents, and then for the drug to come to market in a non-infringing way, rather than this other rule would effectively just penalize them for filing a broad ANDA and going through the patent litigation as to all of them instead of just a subset. So I agree that is one purpose of the statutory scheme here. Another is protecting patent holders' rights. So that's sort of the counterbalance here when you're narrowing interests. But I would like to step back and say that this case is not about whether it was judgment to be entered in the way it is. It's only about the plain language of the judgment. Before those arguments, as Judge Pillard said, you agree that your position or what's happened here is impossible to reconcile with this, the regulation about what's supposed to happen after a finding of infringement, right? No, I disagree with that. So I think that question is separate, as a separate issue, does not need to be reached. But also, it's not the timing rules that govern when FDA can approve. It's fundamentally the order that the court entered, right? So those timing rules define internal FDA operations. The Federal Circuit has held this expressly in Ortho McNeil. It reaffirmed it recently in Vanda. That's how the Federal Circuit has read these provisions. And had Norwich wanted— You say that's how they've read it? What are you referring to? That? Oh, that's how the Federal Circuit has read the FDCA in relation with 271E4. That being— That's the decision in Ortho McNeil. Ortho McNeil decided that the timing rules in the FDA Act, the FDCA, do not serve to limit district court's authority to enter resetting orders outside the bounds of those timing orders. And because of that, the question here is only whether the district court intended its decision to bind even amended versions of the ANDA. And I think on the Delaware record here, that is clear because— What about if we read it— I mean, I thought that Norwich was reading it, that it's saying, we are not addressing that. And they feared that it might be read to be addressing their amended ANDA, but they were told that wasn't before District of Delaware. We're not going to sort of, after the fact, pretend we've litigated something that we haven't, said the District of Delaware, not really, you know, having before it to think through the implications of that. But then when they come to the FDA and say, okay, you can look at that record in District of Delaware, and you can look at whether these were stipulated or not stipulated. And if it's true, as Mr. Prince was saying, that SAILIX brought forward its strongest versions of these various claims, then is it troubling that they, you know, which ones they stipulated away and which not? I mean, why can't the FDA look at that and say, great, we want to get generics out if they're non-infringing, and we're confident on this record that the indications that were to be non-infringing, there's not any, you know, cloud on the merits of that determination. So, sure, we accept the amended ANDA. What's not right about that? I think there are a couple of responses. One, FDA serves a purely ministerial role. Its job is not to dig through the record and assess whether patent infringement would occur on the amended ANDA. That, under the statutory structure, is a question for district courts, not the FDA. So, I think that's the first response. And second, I think that the record just doesn't bear out that Norwich feared the judgment operated as it did and tried to argue around it. I think fundamentally Norwich asked to modify the judgment, did not ask for clarification about whether that judgment actually didn't bar amended versions of the ANDA. It filed a Rule 60 motion saying it was inequitable for it to continue barring amended versions of the ANDA. So, I agree. The best support for what the FDA did here is the statements in Norwich's Rule 60 motion and then its brief to the Federal Circuit, right, saying, for example, please remove the absolute prohibition on approving our amended ANDA. And that may be a powerful point. It is the extremely odd feature that the case would be entirely different if they had started that motion by saying, we don't think your judgment bars our amended ANDA, but in an abundance of caution and as any prudent lawyer would do in this situation, we are asking you to clarify that it doesn't bar our amended ANDA. It's a little strange if the whole case turns on that. I don't think the whole case turns on that. I think it is the relationship between what they filed in contesting the judgment and what they filed in the Rule 60 motion and then what the dispute about the judgment. Salix wanted a judgment that barred ANDA 214-369, period. Norwich wanted one that would allow carve-outs of the HE indication. The District Court adopted Salix's version. When there's a dispute at the Rule 60 stage, Norwich said, we want to modify that. We think that's wrong. We want approval for an amended ANDA. The District Court rejected that and the Federal Circuit affirmed it. So, I think it's the combination of the two, not just magic words and emotions specifically. I know I've asked this before, but can you explain why the statute and the regulations would require that, given that as Judge Garcia was asking, assuming one would want an ambitious ANDA to clarify validity of patents, which are anti-competitive and limit the market, but you don't want to make that carry this downside risk of huge amounts of money and huge if you overshoot and, as in this case, have one infringing indication, like dropping the correct way in FDA's understanding of its statute and regulations to drop the infringing intended use and proceed with a non-infringing label is to go back and start over? So, I want to make our position really clear on this point because I don't think the statute and regulations require the District Court judgment necessarily to have entered an order that would bar even amended versions of the ANDA, either at the judgment stage or at the amended stage. So, it's not a complete requirement of the statute. Do they even authorize it? Yeah, it's within the District Court's discretion at that point, at least once the judgment is entered, right? So, on the facts of this case, you have a post-judgment amendment and this is what the Federal Circuit has said in its fairing decision that after the judgment, the court has discretion to consider whether to amend that judgment in light of an amendment to the ANDA. And that's what's happened here. That's the direct avenue on direct appeal. The District Court declined to do so and reaffirmed that its original judgment barred even the amended ANDA and the Federal Circuit affirmed. And why does it have authority to do that? Through the Patent Act, 271E4A provides it authority to reset the deadlines for ANDAs. If there are no further questions, we'd ask that the court confirm. Mr. Killian. Good morning, Your Honors. May it please the Court, Brian Killian, v. Salix. I think underneath many of the court's questions here has been, I'll call it an assumption, which I think fed by Norwich, that the question of whether the amended ANDA truly does, no longer infringes, is kind of an obvious answer. We strongly disagree, but I don't think you need to take our word for it because Judge Andrews was presented with this very question in connection with the Rule 60b-5 motion to deem the judgment satisfied. The way the statute works is that once you get the infringement finding under Paragraph 3, basically Romanette 3, if you've made a paragraph and then if the patent holder brings the lawsuit, then there's this complicated decision tree. And at the end of each of the points on that decision tree, it's of whether there's been a finding of infringement or a finding of non-infringement. They got a finding of infringement. They were then amended. And under the regulations, they're allowed to submit that amendment, but it doesn't automatically control the timing of the effectiveness. So they went back to Judge Andrews to deem the judgment satisfied. And he declined. And part of the reason he declined, Your Honors, this is on JA-331. This is his reconsideration decision. I'm just going to read a sentence. It is not a simple matter to determine whether an ANDA applicant has successfully carved out language from a label to turn infringement into non-infringement. The defendant, that is Norwich, other than saying it has successfully carved out the HE indication and providing me a label, has presented no evidence in support of its assertion. In other words, in this case, we came into court with well over 25 patents. And according to Judge Andrews, we were not going to get to try all of those. And so... I'm sorry. I thought your position was that you were not challenging the substance of the Delaware District Court determinations that the two uses are, in fact, non-infringing. I thought that was... Because, Your Honor, I don't believe we think that's actually what Judge Andrews held. What Andrews held is he considered eight patents. And he found infringement as to the HE and validity as to those HE patents. And then he found infringement but invalidity as to the tried IBSD patents. But there were almost 20 patents that we didn't get to try. And we put them into a stipulation. We stipulated to non-infringement. So put it another way, that you're not challenging the 370 ANDA on the ground that the indications are infringing. I'm not sure I follow with the 370 ANDA question. That they're not infringing the patents that were found non-infringing in the 369. In the 370 case, which is in its early stages in New Jersey, we are suing over patents that are applicable to the 370 ANDA. And there's no HE patents in that. So the HE case, the HE patents, no HE patents are asserted in that case. Right. So the footprint of it is parallel to the attempted amended ANDA in the 369, right? And you're not in the 370 challenging the intended uses as infringing. Oh, we are. That is the 370 case. We're challenging that it's violating our IBSD patents in the 370 case. It's a different set of patents that were then tried in the 369 case. But this gets to my point, Judge Pollard, that we only were able to try. So it's challenging them because as different patents from the ones that were found non-infringing. Right, but to the same use, which is why when your honor asked the question about one use or another use, I think that slightly oversimplifies it. Because there are various patents. Bingo. There's a lot of patents for each of the indications. And so, yes, Judge Chrissy. I hesitate to cut you off, but I think you've already said that. Is your point that if during trial they had disclaimed the HE use, you may have asserted additional IBSD patents in that location? Completely different trial, yes. We only had 20 hours to present our case and we had to dedicate a substantial portion of that time to our HE patents. If they had carved out before trial, we would have been able to focus those 20 hours on IBSD. But if we did have the assumption that you started with that, what's the big deal? There was a final determination that only HE use infringes and you just have to disclaim that use and you can go to market. Your point is? That is not obvious at all. Correct. But it's not that it's not obvious as to the HE use. It's not obvious as to the other use. Correct. And I'll note to the court, when we took, we only persuaded one judge that we'd have put on sufficient evidence to the validity of the IBSD patents. And it is our view that if we had not had to spend so much time in trial resources on the HE, I think we could have got at least one more judge in the Federal Circuit and maybe Judge Andrews himself. The point is, these decisions have substantial repercussions. And so that's why the FDCA, the Act, puts the patent judge as the one to decide whether or not a post-trial carveout truly cures the infringement. In the Farron case, which we've discussed... Other cases? I'm sorry, please go ahead. Yeah, no, the Farron case, I think I was just going to use as an example, Judge Garcia, if I'm anticipating your question. In that case, the ANDA applicant had brought up at trial and the judge, in fact, discussed at trial the possibility of a carveout. And they were able, therefore, during the trial to litigate the question of whether, well, it wasn't a carveout, but removing the formulation, changing the formulation, whether that would then leave an infringing patent or infringing ANDA or whether it be a non-infringing ANDA. The point is, there was trial time and the patent holder had its rights vindicated because it was timely raised. I hear that you're making an argument about sort of resources and the limitations of the patent court in, you know, you can't litigate everything and you don't litigate everything, you litigate your top priorities and those priorities may shift. But it does seem different, and this is, you know, Norwich's argument that in Farron, if it's a formulation, that's an issue that it doesn't have the sort of what I think of as this modular quality of the different patents with the different indications. You're not like coming up with something that... You're not changing the formulation. I understand there's a technical difference between carving out a use and changing the formulation, but the upshot is the patent holder in either case has advanced notice of what the target is and then could put on the best case that it has available at the time. And so, as I said, I do want to clarify, this is not a simple matter of just whether the carveout cures the infringement because there were all those non-litigated IBSD and polymorph patents in the stipulation. As we pointed out, the footnote in the stipulation very clearly says that my client will agree to a non-infringement finding, but only if the conditions of use are not amended. That's actually a fair phrase. But the point is, it was a game-time decision... Were the conditions of use amended? The indications of use. I'm sorry, indications. Well, were the indications of use amended with respect to the patents that they're now... On which they're now seeking to go... The patented uses... Indications as to which they're seeking to go to market. Those haven't changed. I don't fully follow Your Honor's question, but I'll try my best to answer it. I'm not the specialist that you are, but... But by carving out the HE, right? Right. There is now just the IBSD indication, and the trial in the 370 case in New Jersey is only focused on the IBSD indication. The indications with respect to IBSD haven't changed. The indicate... Well, that is the... IBSD is the indication, so that's what I'm... But you said, say it again, I know this is all terms of art, that the stipulation was limited to circumstances in which what didn't change? The indications. Okay. So the indications for the subject patents didn't change. The indications for the surviving... The ANDAs. The three, so... That are in the amended ANDA, those are the same as the indications that were litigated as to those patents that were litigated in the District of Delaware. So it's not saying... No, because the patents in the stipulation weren't litigated. I think that's... And I'm sorry if I'm not fully understanding. Right. This is the 19 patents that we didn't have any time to litigate, and we said, fine, we'll give you a non-infringement finding. But that's just a recognition of the fact that we didn't get to litigate it because you put on... We didn't get to litigate them, but the ones that they're wanting to go to market on, you did get to litigate. We got to litigate a handful. That's correct. Not all. Let me be clear. In the stipulation, Your Honor, it covers HE patents, IBSD patents, and polymorph patents, right? So each of the types of patents, there were some that were litigated and some that were not litigated. And so it wasn't... So your flame is that it's to the extent that Norwich is saying, we don't want to infringe any of those stipulated patents. We're just going to use... We just want to go to market for the indicated uses on IBSD and polymorph that we won. If that were their position, what is the argument that the deprioritized stipulated indications are somehow an obstacle? Well, so this was presented to Judge Andrews in the reconsideration motion, and he's the one who said in that quote that I won't reread to the court, that it is not a simple matter to make the determination because as we presented to him, we didn't get to litigate a bunch of our IBSD and that we entered into and that he so ordered recognizes that it was a conditional stipulation. So I imagine Mr. Prince would also say smarter things, but one thing that occurs to me is that he might say, you're saying we had to not litigate certain IBSD patents. Number one, that means you made a judgment during trial. Those were not your strongest patents. You litigated the strongest ones and you lost. And also if you think they're strong, sue us on the amended ANDA. Initiate a litigation. And the reason we haven't brought that lawsuit is because as Judge Andrews has held, the amended ANDA is not approvable until October 2029. And that was the longest live patent that we litigated. And so your honor, there's really no fight over that we could really bring right now for the amended and infringe those because as the judgment pertains to the amended ANDA, it's not approvable during the lifetime of any of the patents. But that is a bit circular because we're questioning, I think, why that is. Why? Why they have that later date. Right. So they have that later date because when they lost that trial on the HE patents, that was the October 2029 was the expiration of the longest lives of the HE patents that they were found to infringe and that were deemed valid. And that patent, I understand, had a longer expiration date than any other patent that was at issue on our complaint. And so there's no, as long as that judgment blocks, there's no suit for us to bring to challenge the amended ANDA because by the time that's approved in 2029, the other patents that we didn't get to litigate will have expired. So it's, I don't know that it's, I don't believe that it's circular. My question is a counterfactual where Norwich has the right reading of the judgment and what would happen in the world is you would go ahead, but I understand your question. Sure. And that's the reason why Judge Andrews is the one in charge of making these determinations because he'll have already seen, have we had our chance to litigate these questions? Did it come up at trial? And if he says- Judge Andrews is supposed to essentially, in your view of how this scheme would work is to weigh the unfairness and the notice and all the various interests and decide whether to carve out the amended judgment, other amended ANDAs. That's exactly right. He's the one who heard the trial. He knows whether it's obvious or not that the carve out cures infringement. He knows that the parties made strategic decisions. He evaluates the equity. He evaluates the fairness. As your honors noted, Norwich did appeal the rule 60B5 determination and the federal circuit unanimously affirmed that. And so those decisions we think are consistent with the statute. They're certainly protective of our patent rights. I've gone all over my time. I'm happy to address other questions, but- I think this is a friendly question to the extent it makes any sense. I don't know if you've ever been to a basketball game at halftime and they have a competition for a fan. You get to shoot a free throw, a three-pointer, and a half court. You can make all three. I'm imagining that you have, I'm just going to simplify, but three HE patents and three IBS patents. And your odds of prevailing on each of those patents differ from each other. One might be the odds of making a free throw. One might be the odds of making a three-pointer. And one the odds of making a half court shot. And the judge here said, all those six patents, you get two. You get to take two shots. And so you took your free throw for the HE and your free throw for the IBS. You hit your free throw for the HE and you missed your free throw for the IBS. But if they had carved out the HE to begin with, you could have taken the free throw for the IBS and the three-pointer for the IBS. You may well have made the three-pointer for the IBS. With the additional nuance, Judge Walker, that it's not just simply taking a shot. It's the amount of time it takes to win. So hypothetically, our best HE patent may need 10 trial hours. And if you only have 20 trial hours, you have to make these trade-offs. It may be that the two best patents are each 10 hours each and that it's just a better judgment to litigate nine patents that each only need an hour and a half because of the way the court has set the top. Those are strategic decisions that we're not here to second-guess and re-litigate, but that Judge Andrews was the one who superintended. And that's why we believe that his decision was correct. That's not the question. Why FDA's decision to make the effective date in accordance with this decision is correct. We'd be happy to address the statutory arguments that we raised as well, the regulations, but if the court would like me to sit down, I'll do that too. All right. Okay. Thank you, Your Honor. Thank you. Mr. Frenz, we hear your rebuttal on this appeal. Thank you, Your Honor. Maybe I'll start with FDA first and then move on to the intervener. FDA was sort of acting like this depends on what we were fighting about prior to the judgment and what happened in the Rule 60 proceedings, but I don't think that's the actual logic of its rationale. I don't think it's saying there's something specific about this case. The tentative approval decision just notes it's set the date. So it's not clear to me FDA is doing a one-off specific interpretation because of this judgment or it's just interpreting these kind of judgments incorrectly all the time. But if it's interpreting this way all the time, that's certainly not how statute is meant to work. Salix keeps saying that they made strategic choices and all that, but these patents are not completely distinct patent, right? They're all fairly similar patents. They chose their best patents to litigate, and the stipulation they're talking about was after the case was tried, right? So they picked their best patents and they litigated it. Yes, Judge Andrews did put some restrictions on the trial time, and most judges do that, and that's just part of trial. It doesn't mean we should distort how the entire statutory scheme operates because of that. They could have asked Judge Andrews for more time if they really thought that was going to be the issue. But more fundamentally, the Patent Act gives us the truly believes there's still infringement, it will be able to sue us again for patent infringement. If it believes that we violated the stipulation in that case by amending the ANDA, it can sue us for patent infringement. But it's not going to do that because it knows there's no infringement. And again, I just want to say this again. We know that from the 370 case because they did not assert these patents against us when they sued us about the 370 case. So this idea that there's some infringement from their HE patents that reads over to IBSD is a complete fiction. Or they would have asserted those arguments in their 370 case. And I think my friend was also conflating what they're doing in the 370 case. They're suing us on IBSD patents in the 370 case, but that has nothing to do with the patents that were at issue in 369. Those were later listed patents. They litigated in 369, and it was unfairly deprived of the ability to litigate, as it says. It would be asserting those in 370 now, and it's not. I'm good. Thank you. All right. The case is submitted.
judges: Pillard; Walker; Garcia